[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: P'S MOTION FOR TEMPORARY EXCLUSIVE POSSESSION (#160 P'S MOTION FOR MODIFICATION OF PARENTING TIME (#224) D'S MOTION FOR MODIFICATION OF CUSTODY (#226)
After a lengthy trial, the marriage of the parties was dissolved on June 13, 1991. Both sought sole legal custody of their two minor children, Joseph, born January 2, 1986, and Matthew, born May 8, 1987. This issue was vigorously litigated, and the children were represented by counsel.
The trial court awarded sole legal custody of the minor children to the plaintiff. It ordered shared physical custody and approved an arrangement that had been agreed upon by the parties that involved the children living in the marital residence with the mother for five days a week and then the mother would leave and the father would move in for the weekend. This practice is called "bird nesting".
The plaintiff appealed the judgment of the trial court raising issues that do not affect the custody orders of the court. The defendant filed a cross appeal that possibly could impact on the decisions concerning custody. The parties were heard by the Appellate Court and a decision is awaited.
The defendant has requested this court to withhold its decision on the pending motions until the Appellate Court issues its decision. This court has decided to deny this request. There is no certainty that the appellate decision will be shortly forthcoming, or that its decision will impact on the issues before this court. Also, the problems revealed to this court during the course of the hearings require prompt attention.
Extensive hearings were held by the court on the plaintiff's motions for exclusive possession and modification of the parenting time, and the defendant's motion for modification of custody. Testimony from several witnesses was presented on twenty five trial days. Over one hundred exhibits were offered. A guardian ad litem was appointed for the children, and she was represented by counsel.
Both parties agree that the birdnesting arrangement is not working and they are unable to reach any accord on decisions affecting their children's education, health or extra-curricular CT Page 3470 activities. However, they greatly differ on the effect their differences have on their children.
The plaintiff presented evidence indicating a crisis exists, particularly for the child Joseph, because of the environment created by the parties' interactions. Joseph is being treated by a psychiatrist, Doctor Herbert Sacks, who testified Joseph is severely ill and the long term prognosis is extremely guarded.
The defendant presented evidence to demonstrate that there is no crisis and that the children are doing well both at school and socially.
Doctor Sacks, Doctor Stephen Herman, the court appointed evaluator and Albert McGoldrick, family services counselor, testified that bird nesting should terminate and the children should reside with the plaintiff. The guardian ad litem concurred with these recommendations.
The defendant asks the court to disregard all the evidence presented against her position and not heed the recommendations of the guardian ad litem because of the defendant's perception that a conspiracy exists to discredit her abilities as a parent. She accuses the plaintiff's counsel, Joseph's therapist, the court appointed psychiatrist and the family services counselor of participating in the plot against her. The defendant has failed to come close to convincing this court of any merit to this serious allegation.
The court finds that there is more than sufficient evidence to indicate that there has been a substantial change in the circumstances regarding the best interests of the children since the judgment entered on June 13, 1991. There was ample credible testimony from Dr. Herman, Dr. Sacks, and Mr. McGoldrick to substantiate that claim. The defendant, herself, testified that bird nesting is not working and reported incidents indicating the inability of the parties to communicate. The defendant alleges a substantial change of circumstances in her current motion to modify custody. Clearly, the passage of time has revealed that the present arrangement is not working, and that changing the living environment of the children is necessary.
The difficult question the court has is which parent shall have sole legal and physical custody. This is the same problem that confronted the original trial court. Both parents have CT Page 3471 parenting skills, love for their children and a strong relationship with Joseph and Matthew. Both have shortcomings which were amply demonstrated by the evidence.
After considering the strengths and weaknesses of the parties's parenting skills, the needs of the children, the testimony of all the witnesses and the recommendations of the guardian ad litem, the court concludes that it would be in the children's best interests at this stage of their lives if the plaintiff is the custodian with whom they should reside and who should make the important decisions for them. The children require stability and predictability in their lives. The plaintiff appears better equipped to provide this to them. Although the defendant's intentions are good, the court concludes from the evidence presented that the defendant is insensitive to the needs of her children and her insight of how her behavior impacts the children is very limited.
The following orders may enter:
1. The portion of the judgment entered on June 13, 1991 dealing with custody, legal and physical, is hereby modified by the following orders.
A. The plaintiff shall have sole legal and physical custody of the minor children and shall have final decision making authority on matters of the children's health, education and welfare. The plaintiff shall keep the defendant informed of all such major decisions within a reasonable time.
B. The defendant shall have alternate weekend visitation with the children commencing Friday after school, or 3:30 p.m. if there is no school, and ending Sunday at 6:00 p.m. If Monday is a legal holiday, visitation shall end at 6:00 p.m. Monday. In addition, the defendant shall visit with the children each Wednesday after school, or from 3:30 p.m. if there is no school, to 7:00 p.m.
C. During the summer, the defendant shall continue to have alternate weekend and midweek visitation as previously stated. In addition, the defendant shall have two non-consecutive blocks of time with the children, consisting of seven days each, which may include weekends, vacation or holiday. Each block shall be separated by at least a two week period. The parties shall notify each other of their summer vacation times no later than April 1, of CT Page 3472 each year. However, for the calendar year of 1993 only, they shall exchange vacation schedules by June 1. The plaintiff may elect to cancel up to 3 Wednesday visitations a year (not during the defendant's elected summer 7-day blocks or vacation periods and not consecutive).
D. The parties shall alternate Thanksgiving, defined as commencing two hours after the close of school on the day before Thanksgiving and ending at 6:00 p.m. on the Sunday following Thanksgiving. The plaintiff shall spend the Thanksgiving holiday with the children in odd numbered years, and the defendant shall spend the holiday with the children in even-numbered years.
E. The parties shall equally divide the Christmas school recess, commencing at 9:00 a.m. on the first day after the recess commences and ending at 6:00 p.m. on the day before school resumes. The defendant shall have the children with her for the first half of every Christmas recess, and the plaintiff shall have the children with him for the second half of the Christmas recess.
F. The parties shall divide and alternate the winter and spring school breaks which shall commence at 5:00 p.m. on the last day of school and conclude at 6:00 p.m. on the day before school resumes. The defendant shall have the first half of the winter break, and the plaintiff shall have the first half of the spring break.
G. The defendant shall have the children every Easter Sunday from 9:00 a.m. to 6:00 p.m.
H. The plaintiff shall have the children with him on the first night of Passover, Rosh Hashanah and Yom Kippur from 4:00 p.m. until 6:00 p.m., the next day.
J. The parties shall alternate the children's birthdays, so that in one year the plaintiff shall have Joseph with him on Joseph's birthday, and the defendant shall have Matthew with her on Matthew's birthday, and in the following year the plaintiff shall have Matthew with him on Matthew's birthday, and the defendant shall have Joseph with her on Joseph's birthday. All times for birthdays shall be from 10:00 a.m. to 6:00 p.m. except if it is a school day in which case it will be from 4:00 p.m to 7:00 p.m. Notwithstanding, whose birthday it is, the other child may also join the birthday child. CT Page 3473
K. Each of the parties shall keep the other informed at all times of the whereabouts of the children, if its is other than in the general area of their home while the children are with them and shall, if either has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of the children, promptly notify the other. Each of the parties will furnish the other with copies of any reports from third persons concerning the health, education or welfare of the children. Each party shall notify the other in writing ten days in advance if they are planning to take the child(ren) on a trip in excess of one hundred miles.
L. The parties shall exert every reasonable effort to maintain free access, including telephone access, and unhampered contact between the children and each of the parties and to foster a feeling of affection between the children and the parties hereto. Neither party shall do anything which may injure the opinion of the children of the other party, or act in such a way as to hamper the free and natural development of the children's love and respect for the other party.
II. A. The evidence clearly indicated that it is in the children's best interests for them to continue living in the family residence for a period of time. It is not in their best interests for both parents to continue living in the residence. Therefore, effective May 17, 1993, the plaintiff and the children shall have exclusive possession of the family premises known as 106 Porchuck Road, Greenwich, Connecticut, and the defendant shall vacate the premises not later than May 17, 1993. Because the welfare of children is at stake, this order will not become automatically moot when the Appellate Court issues its decision. These orders impact on parenting time and will continue until further order of this court or the Appellate Court.
B. No personal property shall be removed from the premises in the presence of the children. The parties shall attempt to resolve all issues concerning furniture and household items, and in the absence of a written agreement within two weeks of this decision, the matter shall be referred to Family Relations for resolution and in the absence of an agreement, a presentation of a written inventory of personal property to the court for prompt hearing. No furniture or household items shall be removed until written agreement or final disposition by the court.
C. A hearing concerning counsel fees, expert fees and fees CT Page 3474 for the guardian ad litem will be held on June 4, 1993 at 2:00 p.m.
D. These orders shall take effect immediately and shall not be stayed during the pendency of any appeal period or as a result of any appeal by either party.
Plaintiff's motions #160 and #224 are granted. Defendant's motion #226 is denied.
NOVACK, J.